Case number 21-1171, National Association of Broadcasters et al. Petitioners v. Federal Communications Commission and United States of America. Mr. Kinnear for the petitioners, Mr. Scherr for the respondents. Thank you. May it please the court. Section 317C of the Communications Act defines precisely broadcasters' duty and diligence in obtaining information necessary to announce the sponsor of paid programming. The broadcaster, quote, shall exercise reasonable diligence to obtain from its employees and from other persons with whom it deals directly, end quote, the necessary information. As this court held in Loveday, the language of 317C does not impose any duty of independent investigation. And Congress restricted the broadcaster's duty for a reason. Broadcasters are not investigatory bodies that are capable of determining the facts of private transactions. And especially in 1960, Congress would have understood that broadcasters, particularly in radio stations, were often small, sometimes single-person operations. These are country music, DJs, local businessmen in small towns who sell advertising. They're not lawyers and analysts, certainly not capable of doing the sophisticated legal investigation that the order commands. And while the government attempts to downplay the investigations, paragraph 42 specifically says, we require the licensee to investigate the nature of the party leasing the airtime. And while every search of a database is an investigation, it is indisputable that if you get a hit in your search results, you have to conduct a full-fledged investigation. And for this regulation to have any arguable worth, you have to posit that there will be such hits, however implausible. And I think it's worth spending with the court a moment to understand what happens when you get a hit. And the broadcaster first has to then retrieve, locate, registration statements of potentially multiple foreign principals. It has to know that there are six-month supplements that are filed, and that it has to investigate the standard form exhibits A and B, disclose information about the principal, and the activities undertaken. It then has to apply a specialized legal definition, which you can find at JA-237, that covers only a subset of FARA registrants. It's only those with principals that are foreign governments, foreign political parties, or an entity that's controlled, operated, or financed by such a government or political party. And then, critically, there's the final element of the definition, which says you have to be acting as an agent in this transaction, in your capacity as an agent. Now, that itself is a complex analysis, because you have to apply the FARA exemptions. For example, the exemption for programming for fine arts, religious programming, scientific programming. But even then, you can't get an answer, because the prospective information you need about this prospective program is not to be found in the historical documents in the FARA or Section 722 database. I can't quite tell if you're challenging the disclosure obligation, or the specific language for the disclosure, or if you're just challenging the investigation. We are challenging the investigational requirements. We would have no problem simply with an expanded disclosure. But we are challenging also the fact that we have to make compelled speech on our own behalf, after undertaking this investigation, that this program, specific programming, was paid for by person X on behalf of persons X. Why is it compelled speech if it's a disclosure after the investigation, but it's not compelled speech if it's disclosure absent investigation? It would be compelled speech either way. But I thought you just said you were not challenging the disclosure obligation itself. No, if we had just had a disclosure obligation, I think that would be narrowly tailored. But if you have to do a disclosure after investigation, and this is the critical point, investigation that can't yield the information to make the disclosure. And so what's going to happen? A broadcaster is subject to forfeiture if it is found by the commission after the fact. Why can't it yield? And maybe that's what you were just explaining. But why can the investigation not yield the information that you'd have to disclose? Because the investigation, first of all, the documents in these databases are historical. You file a registration statement, you update it every six months. When you're approached with a proposed lease, that's prospect. Let's say, you know, I want to air this programming. That's not going to be in there. You know, whether you're the agent, who you're acting on behalf of with there, you can't find that out from the documents. So it's just, that's something. Is there any disclosure to the FCC before the program airs under the current regime? No, and that would have been something they could have adopted something like that. Yeah, and the reason I'm thinking is that you just identify the entity that is doing the, you know, getting the lease and submit that to the FCC and the FCC can do its investigation. But, you know, the FCC didn't consider that kind of alternative. Is there any information in the record that regarding voluntary or investigations by major broadcasting stations? No, there isn't anything like that because it's simply not required. It's not required, but it strikes me that it would be prudent whether it was required or not. Because if the program airs, if it later turns out that it's Russian propaganda, that's not really in the interests of the station. So they may conduct the investigation anyway, just to cover themselves. But the record doesn't indicate any voluntary investigation. So, Mr. Kanari, I take it the core of your case is about the narrow scope of the diligence to obtain from employees or lessees. Is it within the commission's authority to, in obtaining information from lessees, to require that lessees submit a screenshot of the page of the FARA where the sponsors would appear alphabetically, you know, and just to show that they're not on the FARA list? Absolutely. They could have imposed that kind of obligation on lessees and derived from Section 507, where you have to disclose any information you have about the payor. That would have been perfectly reasonable to do. And is that meaningfully different from what the rule does require? I think it would achieve the same results, but it wouldn't burden the speech or broadcast. I'd like to emphasize the point about forfeitures. Generally, forfeitures under Section 503 of the Act require willful or repeated violations of a regulation. But Congress in 1960, when it created Section 317C, created effectively a strict liability forfeiture for violations of 317C, which underscores the narrowness of that provision. But it also shows you the risk to the broadcaster if it, you know, if it's not certain, and in terms of whether there's a foreign governmental entity. And so the default is, hey, if this is a close call, I'm just not going to carry the programming. And so that's going to chill speech. Are they going to carry the local Vietnamese immigrant community if they think, you know, I'm not confident I can find this in the FARA database? So that's part of the chilling of speech. I would also emphasize three points with regards to chilling. The first is that any restriction on speech has to be to identify real harms and alleviate them to a material degree. Because the Commission narrowed the scope of the investigation, it basically has limited it to FARA registrants who lie about their own status, something never known to occur, not predicted to occur. I see I'm into my time, so. Well, or people who have obtained information from someone that they didn't realize was a FARA registrant. It seems like that's the more likely situation. I mean, you're right that somebody could be just lying, but they could also be getting information, you know, getting programming that was developed as propaganda that they don't realize was developed. That's quite possible, Your Honor. Yeah. And I think, you know, there's also the fact that, as I mentioned, you can't actually get the information from the prescribed investigation. And finally, it's such an overkill because by triggering investigations universally after every denial in an industry where almost all leasing is by domestic or private transactions, you're going to burden a lot more speech. What's your response to the FCC's claim that the boilerplate language that you find in many statutes that says you must promulgate appropriate rules and regulations to carry out the provisions is the mourning versus family publication service issue? I think the Court's precedents are clear that it doesn't allow you to overcome limitations in the statute that you're carrying out. They can't erase the restriction. And reasonable diligence has to have a predicate. There has to be diligence to do something. And Congress defined that predicate was to obtain from specific sources. The Commission's not entitled to violate— As far as I understand, it's pretty simple, that under the statute, the only information that you're required to get is from the individual seeking to lease. Right. Right? That's right. And that's it. That's it. To get it from the database at the Department of Justice on the Foreign Agents Registration Act, that's not getting it from them. Exactly. That's getting it from the government. Right. There's a bright line. And if the Court were to accept the Commission's erasure of the bright line, that's going to inject uncertainty beyond this rule. Because in case by case, if reasonable diligence can include online searches, then in every case, the broadcaster asks, well, for this particular transaction, do I have to do an internet search or a public database search? So really, I think the Commission has to abide by the language that Congress imposed. Mr. Gunner, do you know why the statute includes the due diligence from the licensee's employees? Yes. That's primarily pertains to Section 317. I think it's D, where if the payment is not made to the licensee itself, you also have to disclose if it was made to somebody else. This goes back to the payola scandals, where record companies, for example, were paying off DJs, and they weren't necessarily paying the licensee himself. So you want to have reasonable diligence to uncover any payments to the employees that are not payments to this licensee, because you have to make that separate announcement under 317. I forget whether it's offhand, whether it's C or D. But it's different from the payments to the licensee. Thank you. Thank you. We'll give you a little bit of time for rebuttal. Morning. Good morning. May it please the Court. Bill Scher, on behalf of respondents. The FCC adopted the challenge rule in response to reports that foreign governments are sponsoring broadcast programs without announcement of their role. The rule requires, among other things, a simple name check to confirm that an entity leasing airtime is not registered as a foreign agent or a U.S.-based foreign media. Be clear, the name check is the only statutory issue in this case. The rules of the reasonable diligence requirements involve increased lessees, which pose no problem even under NAB's reading of the statute. The name check requirement is consistent with the statute. Section 317C imposes a duty on licensees to diligently seek sponsorship information from persons with whom they deal directly. The name check is integral to that duty. It confirms the information that licensees obtain from the source the statute specifies. Now, NAB argues the plain language of 317C bars such a requirement, but the statute doesn't use the word only or provide any other clue that Congress intended to shield licensees from ever having to confirm sponsorship information. Why doesn't that make the phrase, from the employees or the people it deals with directly, surplusage? The phrase, from persons with whom it deals directly, specifies the nature of the duty. Licensees must seek sponsorship information from those particular individuals, and it matches up with the disclosure obligation imposed by other provisions of the statute, Section 508. But there's nothing restrictive about the specification, the description. And in fact, if you flip it and read from persons with whom it deals directly as restrictive, I think then you end up with surplusage with the term reasonable diligence. Because if Congress meant to strictly limit the duty to simply asking for sponsorship information from a certain source and never checking it, then it's not clear why Congress would have used a broad term like reasonable diligence. So there's some tension there. And we would also maintain that there's tension between a restrictive reading of the statute and Section 317E, which gives the commission authority to implement the sponsorship identification requirement. If the statute said I could get a broadcast license from the FCC, assuming I meet certain criteria, could I then go to the FEC and ask them for a broadcast license under the argument that, well, it didn't say I could only obtain a license from the FCC? Your Honor, clearly, the statute doesn't have to include words like only. And certainly, the mere fact that it specifies from X doesn't mean that Y is allowed. But under the case law, in order to find that the specification of one thing excludes another thing, the negative inference, there has to be some clue in the statute that Congress's intent was, in fact, restrictive. And we would maintain that the dependent clause in and of itself is not inherently restrictive. And there's simply no other statutory clues to a restrictive intent. You are conceding, in a sense, that what the FCC is requiring here goes beyond an obligation to obtain information from the licensee's employees and beyond an obligation to obtain information from the people the licensee deals with. No, Your Honor. We have two arguments. Our first argument is that the name check is integral, is corollary, to the express duty that the statute imposes to seek information from the persons that the statute... And the other thing is in the alternative. So in the alternative, if the court finds that Section 317C silent or doesn't, the breadth of the duty that's expressly or implicitly imposed by 317C doesn't encompass a name check, it's our position that the commission still has the authority to impose a name check under 317E, provided that 317C isn't read as a proscription on that. But again, it's our position that there's... Do you have any kind of limiting principle on how far the FCC could go under that second theory? Well, certainly the FCC couldn't require broadcasters to seek information from elsewhere instead of the statutory obligation. And that actually leads me into the nature of the investigation that we're talking about here. The name check requirement, under the rule, broadcasters, if they receive a negative response to their inquiries as to whether the lessee is a registered agent or US-based media outlet, are required to type in a name into the FAR database. And that is the only inquiry that the rule requires. I get that that's this case and the broadcasters say, well, there's more to it than that. But I want to go back a second. Not sure I heard a limiting principle because what you said is, well, it wouldn't be proper for the FCC to do less than they've done. But I'm asking, is there any limit on how much more they could do than they've done? I think that certainly the commission would run into the kind of constitutional problems that the Loveday Court articulated if it were to require the kind of open-ended investigation. And that's the only limit? The statute is limitless until it hits the constitutional limit? I don't think that the statute imposes an express limit. So I think the commission could not override the express duty that it imposes. And do you agree with Mr. Kinnard about the employee's designation in the statute, which puzzled me in reading it? Your Honor, my understanding is that Congress, when it amended the sponsorship identification regulations in 1960, there was a recognition that payments were being made in the chain of program production. Payments were being made to employees specifically and not to licensees. And so Congress imposed the duty to seek out information from sources other than the licensee. And there's a, I think it's 317B, requires that if a payment is made, that if it were made to the licensee itself, to an employee or some other person, that an announcement is required regardless. And so am I correct that your argument, your statutory argument before you revert to 317E is basically to say the licensee shall exercise reasonable diligence to obtain valid information from employees and lessees. And that it's still only getting the information from the employees and lessees, but it has this sort of minimal obligation to backstop that by looking at the FARA registry? That's exactly right, Your Honor. And in a situation like this, where the commission has defined foreign governmental entities based on an appearance on a list of registered agents, we would maintain that reasonable diligence means ordinary prudence under the circumstances. And when there's readily available evidence and the only burden is to type a name into a government list, we would maintain that a reasonably diligent broadcaster would do that in order to be sure of the credibility of the sponsorship information. And what are your responses? Mr. Kinnaird made a couple of arguments about the FARA registry not even being up to the minute in terms of accuracy, and that if you do get a hit, you have to do a whole bunch of other investigations. So you're characterizing this as a very, very, very minimal additional burden, and he's characterizing it as a very onerous and amorphous obligation. Can you respond to his arguments in that regard? Yes, Your Honor. Again, as I started off saying, the statutory issue here is the independent investigation, the requirement to look outside of what the lessee has responded to the licensee. The name check is the beginning and the end of that requirement in terms of what the rule actually insists on. In the event that a lessee's name turns up in the FARA database, that means that an alarm has gone off. The lessee has informed the licensee, I'm not registered. The lessee's name has appeared. So in that situation, there's an alarm, and I think the necessity for the rule, the importance of the rule has been served. And at that point, what the licensee's obligation is tracks the statute completely. The licensee's obligation is to exercise reasonable diligence to get sponsorship information and to make the announcement that's required. The commission's rules have imposed an obligation to identify and announce the true sponsor rather than the name sponsor if the licensee is aware of the true sponsor since 1975. And the commission's rule and the order don't impose any requirement. I mean, the FARA statute, I think, contemplates that the information the licensee would need should be available in the registration statement. They're not that complicated, but the important point, I think, is that the rule doesn't actually require licensees to dig any further in the FARA database than the name search. The in the event that alarm goes off, all the licensee is required to do is to exercise reasonable diligence to make an announcement. If it goes further in the FARA database and discovers that there's an announcement necessary, it can make that announcement. It can go back to the lessee and make additional inquiries if it needs to. And would it serve the government's interest to, were you to not prevail? We've just hypothetically, were you not to prevail in this case? Would it serve the commission's interest and would it be consistent with the statute in your view if the commission required licensees to ask, as I mentioned to Mr. Kinnear, to ask lessees to provide the relevant FARA page showing that their sponsors are not listed where they would otherwise appear? I think that that would accomplish the exact same thing. The only thing that I would add to Mr. Kinnear's response is that that would have to be a requirement that licensees obtain the information from the lessee. So if the lessee, if the licensee were to make the required inquiries and to also say, I'm going to need proof in the form of a website snapshot or whatever it is, and you have to submit that to me, I think that would accomplish the same thing as long as it was a requirement on the licensee, because the statute imposes requirements directly on licensees. So the licensee shall require that lessees provide to them this information. I think that that would accomplish the exact same thing. Yeah. I think that points out how limited the scope of the required independent inquiry is. I see that my time is up. And a couple of times, maybe more than a couple of times, you've suggested this is a pretty simple, quick, easy name search. And I'm not going to do justice to the broadcaster's argument. I'll let them maybe mention this, but you know what it is, so you can anticipate it. They say, well, you might go to FARA and you might find that the lessee's name is there. That doesn't necessarily mean that the lessee is acting as an agent of a foreign government in the context of the broadcasting question. And there might be 2,000 pages on FARA dealing with that lessee's relationships with foreign governments. And so it's not like you look in the phone book, their name is there or it's not there. It might be, look at FARA, their name is there, and you've got 40 more hours of investigation to go before you can figure out whether there's some kind of duty trigger. So what's your response to that? So a couple of things, Your Honor. First of all, the rule doesn't require licensees to do any further investigation on that database. They can simply go back to the lessee at that point and make further inquiries to the lessee. And the broadcasters are not arguing that the inquiries to a lessee are outside of the scope of the statute or that they violate the Constitution. In addition, if you look at the FARA statute, it specifically requires that the registration statement provide a clear explanation of who an agent's foreign principles are, what its activities are on behalf of each one, and whether any of those activities are connected to a foreign government or a foreign political party. The registration statements are not long in general, and I recognize that there's a burden entailed, but it's a burden, it's essentially, we would sort of argue, no harm, no foul. The additional burden is going to attach when an alarm has gone off. These licensees, our public trustees, these sponsorship identification regulations have applied to them for over 80 years, and the Commission believes that this is an area. I just want to make sure I understood the first part. I don't think this matters if you lose on the statutory grounds, but if we were to get to the APA, or maybe the First Amendment question, it might matter. You're saying if the licensee found a hit on FARA, just they found that the lessee's name was on the FARA, rather than digging through possibly 2,000 pages of FARA information about that lessee, they could just go to the lessee, say, we found your name on FARA, are you an agent of a foreign government? The lessee says no, and that's the end of the investigation. That would be enough? Your Honor, whether it's enough would depend on the statutory standard of reasonable diligence, but we said in our brief, and I'll repeat, that the rule doesn't require any further digging in the FARA database. Whether further investigation in the FARA database occurs is up to the discretion of the broadcaster in the particular case. It may be that the lessee says, oh yeah, it turns out I am a registered agent, it's for different activities, let me provide you with a statement about that, end of story. If the lessee doesn't have any explanation, then a reasonably diligent broadcaster might want to take another look at the FARA database. It's part of your point, Mr. Scherer, that the burden is not a burden specific to alarms that are set off by a FARA listing, it's a burden whenever an alarm about foreign ownership or sponsorship arises, and therefore it's not specific to this rule? It's specific to the rule, but I guess my point is that the government's interest is heightened in cases where the alarm has gone off, and so there's a greater duty of diligence because there's a greater risk that a hidden foreign governmental sponsorship could be going on. Because there's been a failure of a relevant disclosure? No. Yes, because the fact of registration indicates a risk that there is an entity that's acting on behalf of a foreign government, and also because, well, that's the reason. I thought you were making an argument about the burden not being a burden associated with this particular incremental rule, and that if somebody, for example, discloses, you know, I got this programming from so-and-so who, by the way, is on the FARA list, that there would be, and they would say, well, but not with respect to this, or that's an old list, you know, that in that situation, which doesn't implicate the challenge rule, all the burdens would be the same. Yes, that's correct. Under the framework of the pre-existing rules, there was a duty of reasonable diligence. There was a requirement to make a sponsorship announcement. What the rule does is essentially clarify the nature of that duty by defining what a foreign governmental entity is with respect to an objective source. All right. Thank you. Thank you. So, Mr. Kinnear, you've used your time, but as I said, we'll give you a couple of minutes for rebuttal. Thank you. I'd like to make just four quick points. I heard my colleague say that the statute imposes reasonable diligence to get the sponsorship information. That's not what the statute says. The commission is excising the Frunk Laws. And to Judge Walker's point, there is no limiting principle of the commission's construction. I would advert the court to JA-162, an earlier version of this order, where in addition to the FARA searches, they would have, the commission proposed internet searches. And they haven't disclaimed that that's part of their authority. Second, in terms, and I would also add, they said the statute does not use the word only. Well, if you use the word only, you would preclude the kind of voluntary due diligence that Judge Randolph discussed. The reasonable diligence, they define the scope of it. Commission has to obey that bright line. On the point about the 1975 regulation and always having a rule to go and exercise diligence to find the true sponsor, if you look at 73.1212B and E, you can see that's only diligence to make inquiries to the persons with whom you feel directly. I heard my colleagues say, agree with Judge Pillar, that it would be sufficient to just ask the licensee to disclose that information. I think that answers the question about whether this is narrowly tailored, there's a less restrictive means. And I don't think that the commission is really grappling with what happens because of the radical indeterminacy of these investigations. He said today, well, you could just go back to the licensee. The order doesn't say that. That's an APA violation failure to explain. But even in their brief, footnote four on page 11 says, you can go back to the licensee or you can take other appropriate steps. Indeterminate, but it's certainly an investigation beyond the purview of the statute. And I would just urge that there is no simple name check, except for the extreme overkill of this regulation that triggers investigations for truly domestic lessees, for your George Foreman Grinnell infomercial, or your local Baptist church. This is an ill-conceived regulation that is unlawful in multiple dimensions. Thank you. Thank you. Case is submitted.
judges: Pillard, Walker, Randolph